FREDERICK W. LINDSLEY *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

## May 9, 1887.

**Carriers of Live-Stock—Rule of Liability.**—The general rule of the absolute liability of a common carrier for the safe transportation and delivery of property committed to it for carriage is applicable, although the property consists of live-stock, but subject to the exception that it is not an insurer against injuries resulting from the inherent nature or propensities of the animals, and without fault of the carrier.

**Same—Evidence—Burden of Proof of Cause of Death.**—In an action for the death of live-stock in the course of transportation, and wholly un-

der the care of the carrier, the burden of proof is upon the defendant to show that the cause of the death was within the exception qualifying its general liability.

**Same—Evidence held to show Negligence.**—Evidence of circumstances under which the stock in this case died, *held* sufficient to justify the jury in finding the defendant to have been negligent.

**Same—Evidence as to Proper Means of Relief.**—It appearing that a car-load of stock in transit was suffering greatly, probably from heat, it was not objectionable to ask an expert witness what course the carrier might properly pursue for their relief.

**Iustructions as to Requisite Degree of Proof.**—A charge that a fact in issue must be proved *to the satisfaction of the jury* by a preponderance of the evidence, *held*, in connection with other instructions, to mean only that the burden of proof must be sustained by evidence which the jury deem to be preponderant.

Plaintiff brought this action in the district court for Jackson county, to recover the value of 24 hogs, the property of the plaintiff, which had been received by the defendant, as a common carrier, to be transported from St. Paul to Chicago, and which died in transit, owing, as alleged, to the defendant's negligence. The answer denied any negligence. The action was tried before *Perkins*, J., and a jury, and plaintiff had a verdict.

The court refused to give the following instructions to the jury, requested by the defendant, viz.:

"(2) The jury are instructed that the fact that the hogs died in transit raises no presumption of negligence on the part of the defendant, or any of its employes, and that the burden of proof is on the plaintiff to show, by the preponderance of the evidence, that there was negligence on the part of the defendant, or of its employes, which directly caused the death of the hogs."

"(5) The jury are instructed that if, on the whole evidence, in your opinion, it is left in doubt what the cause of the damage was, then your verdict must be for the defendant.

"(6) The jury are instructed that if the evidence, in your opinion, leaves it in doubt as to whether there was any negligence on the part of the defendant or its employes, which directly caused or contributed

to the death of the hogs, then your verdict must be for the defendant."

On plaintiff's request, the court charged the jury as follows:

"(2) In the transporting of the hogs in question the defendant was a common carrier, and, as such, was bound to use all care and precaution for their safety while in transit, so far as human vigilance and foresight and care would go. It was an insurer of the property, except in respect to such injuries as may or might unavoidably result from the essential nature of the property itself, the nature and propensity of the hogs, and their capacity to inflict injury upon each other.

"(3) In this case, unless you find that these hogs died from some inherent want of vitality, or by reason of their inflicting injuries upon each other, or by inevitable accident, the defendant company is liable; and, if it would escape liability, the burden of proof is upon it to show that the hogs died from some other cause than its negligence. In the absence of such proof, the law presumes negligence, and that such negligence caused the death of these hogs. In other words, the defendant, in order to escape liability in this action, must prove to your satisfaction, by a preponderance of the evidence, that the death of the hogs was the result of some other cause than its negligence, or the negligence of its employes or train-men."

Defendant appeals from an order refusing a new trial.

*H. H. Field,* for appellant.

*T. J. Knox,* for respondent.

DICKINSON, J.    1. We will first consider whether there was error in the refusal of the court to instruct the jury as requested by the defendant, as to the burden of proof, and in the instruction given upon that subject. In brief, the question is whether, the hogs having died in transit, the burden was upon the plaintiff to show that the death was caused by the defendant's negligence, and not from disease or from what might be termed natural causes, or was it upon the defendant to show that it was without negligence, so that it must be inferred that the death was from natural causes, for which the carrier was not responsible.

In this state, and generally in the United States, it has been held that a carrier engaged in the transportation of live-stock assumes,

with respect to such property, the common-law relation of a common carrier, with the incident duties and obligations, subject, however, to the modification or exception that he is not an insurer, as respects injuries resulting without his fault, but from the inherent nature or propensities of the animals themselves. *Moulton* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 85, (16 N. W. Rep. 497.) In general, although the rule that the carrier is absolutely responsible as an insurer of the property is subject to some exceptions, as in cases where the injury or loss is to be referred to the act of God or the violence of public enemies, yet the burden of proof, as respects the cause of loss or injury, is, even in such cases, upon the carrier, who, to exonerate himself from liability, must show that the cause of the loss was of the exceptional kind which the law recognizes as excusing him. *Shriver* v. *Sioux City, etc., R. Co.*, 24 Minn. 506; *Tarbox* v. *Eastern Steamboat Co.*, 50 Me. 339; *Alden* v. *Pearson*, 3 Gray, 342; *Murphy* v. *Staton*, 3 Munf. (Va.) 239; *Forward* v. *Pittard*, 1 Term R. 27, 33; Ang. Carr. §§ 202, 472. From considerations of public policy, (*Riley* v. *Horne*, 5 Bing. 217; 2 Starkie, Ev. 287, 7th Am. Ed.,) the mere fact of loss being shown, the law presumes negligence or misconduct on the part of the carrier, and the burden of proof is not upon the owner, although the loss appear to have been of such a nature that it might have been caused by the act of God, if it might as well have resulted from the negligence of the carrier.

Thus, in the case of goods shown to have been burned while being transported on a railway, the owner may unquestionably recover if nothing more be shown, although, for aught that appears, the fire may have been caused by lightning, and not from any human agency. In principle, this case is not different. To put the burden of proof upon the plaintiff would be inconsistent with the legal presumption of negligence or misconduct which is everywhere recognized, and which is in general of a conclusive character, excluding even proof of actual carefulness, except as the cause of the loss may be shown to have been within the legally defined exceptions to the rule of absolute liability. By force of this presumption, the carrier is charged with responsibility, unless in some way it be shown that the animals died from some cause not involving fault on the part of the carrier.

This is not shown by the mere fact of the death of the animals; for, as in the case of loss by fire, this may as well have resulted from the misconduct of the carrier as from the act of God. The court was right in ruling that the burden of proof was upon the defendant.

We discover no error in the form or terms in which the instructions were presented. In saying to the jury that the defendant must prove *to their satisfaction*, by a preponderance of the evidence, that the death of the hogs resulted from some other cause than its own negligence, the court obviously meant no more than that the defendant should establish that fact by what the jury should deem to be the weight of the evidence. This is apparent from the language employed, especially in connection with the instruction given upon the defendant's fourth request.

The fifth and sixth requests of the defendant were properly refused. They were opposed to the correct theory upon which the case seems to have been committed to the jury, (as is apparent from the instructions given upon the defendant's fourth and the plaintiff's third requests,) that the burden was upon the carrier to show, by the preponderance of the evidence, that the death resulted from some inherent property in the animals, without the contributory fault of the carrier.

The instruction given upon the plaintiff's second request was not unfavorable to the defendant, in view of the principle, correctly embodied in it, that the carrier is an insurer, except as respects injuries resulting from the nature of this kind of property.

2. The verdict was justified by the evidence. Without regard to the legal presumption arising from the destruction of the property, the evidence presents a case from which the jury might find negligence on the part of the carrier. This car-load of hogs was wholly in the care of the defendant, it not being customary to allow the shipper to accompany a single car-load of stock to care for it. There is no claim that the car was overloaded, and the evidence is that it was not. Apparently the hogs were in good condition when they left La Crosse, on the morning of May 23d. At Portage, at about 6 o'clock that afternoon, 24 of them, or more than one-third of

the whole car-load, were found dead. At that place (Portage) the hogs then alive were removed from the car, and no more deaths occurred. This mortality was extraordinary; witnesses for the defendant, of experience in such business, never having known more than three or four deaths to occur in a single car-load. The animals were not in need of food. The day was very hot, and, as the defendant's evidence showed, the animals were showered with water (which seems to have been proper treatment) at three places in the course of the day, the last time at about 3 o'clock in the afternoon. Notwithstanding this, the conductor of the train observed that the hogs were panting as though too warm. At midday, at a point 78 miles from Portage, he showered them because he smelled them in walking over the train. He observed two dead hogs at a point 43 miles from Portage, and, at a point 25 miles from Portage, that seven or eight were dead, and the remainder in bad condition. Other stations were passed before coming to Portage, where, as the evidence tended to show, the stock might have been left and unshipped. From this and other evidence tending to the same conclusion, the jury might well conclude that there was negligence in not setting the car off from the train, and unloading the stock, as was done at Portage, before the final destination was reached.

3. Error is assigned as to the overruling of an objection to a question put to the plaintiff in rebuttal, as to what would have been the proper thing for the conductor to have done in caring for the hogs under the circumstances testified to by the conductor, (defendant's witness.) The plaintiff was qualified to testify if such evidence was admissible. It cannot be assumed that all the jurors had had such experience as would have enabled them to judge, as well as the witness, as to what course should have been pursued. The witness might have answered that they should have been showered oftener or longer, or he might have indicated some other course as proper, concerning which the jury may have been uninformed. In fact, the answer suggested a course which probably would have been in accordance with the ordinary judgment of men; that is, setting the car off at a station, and unloading the animals. The question was unobjectionable, and, if this answer was deemed to state what was within the province and

general information of the jury, there should have been a motion to strike it out.

Order affirmed.