7379
### KELLY v. SOUTHERN RY.

1. CARRIER—FREIGHT.—Receipt of a lot of flour in "apparent good order;" that two other consignments of flour of same brand, of same lot and from the same warehouse were delivered about ten days before in good condition, tend to show flour was damaged in possession of carrier.

2. IBID.—IBID.—BILL OF LADING—WAIVER.—Where carrier's agent examines goods claimed to have been damaged in transportation to ascertain the amount of the damage and directs disposition of the goods, a stipulation in the bill of lading that claim for damages must be filed within thirty days is either waived or does not apply.

3. IBID.—IBID.—IBID.—Stipulation in a bill of lading that amount of loss or damage to freight for which carrier is liable shall be computed at the value of the goods at the time and place of shipment is construed to mean the value when received by the carrier with freight charges added.

Before DEVORE, J., Greenville, November term, 1908. Affirmed.

Action by S. R. Kelly against Southern Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *There is no evidence that goods were delivered to carrier in good condition:* 66 S. C., 479; 75 S. C., 280; 77 S. C., 319; 78 S. C., 38, 47, 82; 79 S. C., 342, 349. *In absence of this proof presumption is they were received in condition delivered:* 3 Hutch. on Car., 1593; 16 S. W., 184. *Thirty day limitation is valid:* 1 Hutch. on Car., sec., 442; 71 S. C., 506; 180 U. S., 409; 17 L. R. A. (N. S.), 628, 642. *Plaintiff must show waiver:* 70 S. C., 16.

*Messrs. Haynsworth, Patterson and Blythe,* contra, cite: *Waiver is implied:* 70 S. C., 23. *Interest on claim:* 19 S. C., 39.

November 23, 1909. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This is an appeal from a judgment in favor of plaintiff for damage to part of a carload of flour by contamination with kerosene oil while in the hands of the carrier.

The exceptions impute error to the Court below.

1. In refusing motions for nonsuit and new trial on the ground that there was no evidence that the flour was damaged while in defendant's possession.

2. In refusing a new trial, because there was no evidence of waiver of the stipulation in the bill of lading that claim for damage must be filed within thirty days after delivery to consignee.

3. In charging that the measure of damages was the value of the flour at destination, when the bill of lading provided that it should be the value at the time and place of shipment.

When it appears that a carrier received a consignment in good order, and delivered it in bad order, a presumption arises that it was damaged in the hands of the carrier. *Cooper* v. *Ry.*, 78 S. C., 82, 59 S. E., 930. The bill of lading acknowledged receipt of the flour by defendant "in apparent good order." While "apparent good order" would ordinarily refer to the outward appearance of the goods, or to their receptacles, and not to hidden or concealed conditions, in this case there was testimony that when the flour was delivered to the plaintiff the sacks were stained with oil spots, plainly visible, and the whole shipment smelled strongly of oil. If it was in that condition when received, the carried would scarcely have receipted for it in "apparent good order." Besides, there was testimony that the plaintiff's and two other consignments of flour, of the same brand, and from the same lot, were delivered to defendant at the same time, out of the same warehouse, and shipped in the same car; that a little

oil in a car of flour will contaminate the whole car; that the two other consignments, one for Liberty and one for Pickens, were delivered ten or twelve days before the plaintiff's consignment, and that neither of the others was contaminated. The evidence certainly tended to show that the flour was damaged while in defendant's possession.

The plaintiff testified that as soon as he discovered the condition of the flour, he notified defendant's agent, and defendant's claim agent came and examined it, and told him to dispose of it to the best advantage, and defendant would make it all right with him, and promised to let plaintiff hear from him right away, but never did so, and that he was nearly a year getting rid of the flour; that, at first he thought he could dispose of it at cost, and filed a claim, made out by defendant's agent, for $127, but afterwards discovered that it was worse contaminated than he at first thought, whereupon he told the agent that he would not accept the $127 in settlement, and filed another claim for the cost of the flour, as shown by his invoice. The date of the filing of the second claim does not appear in the record. That it was not filed within the time limited was an affirmative defense, and the burden was on the defendant to prove it. The flour was delivered to plaintiff in March, 1905. Several letters passed between plaintiff and defendant's general claim agent between June 21, and September 27, 1905, relative to the claim, in which the agent stated that it was having his attention, and would be disposed of as soon as the necessary investigations could be made. In these letters of the agent, the claim is referred to as "above numbered claim," and, after giving claim number, as "this claim." In the letter of August 11, 1905, replying to an inquiry of plaintiff about the claim, the agent says: "If you do not hear from me in, say ten days or two weeks, kindly drop me another note." The Circuit Judge properly left it to the jury to say whether these letters referred to the first or second claim, which the plaintiff had filed. The jury

were also instructed that, if they referred only to the claim first filed, they would not be evidence of waiver of the stipulation, as to the filing of the second claim. The verdict establishes the fact that they referred to the second, which was not without support in the testimony. *Hays* v. *Tel. Co.,* 70 S. C., 16, 48 S. E., 608; 67 L. R. A., 481.

Moreover, where the injury to the goods is examined by the carrier's agent for the purpose of ascertaining its extent, as was done in this case, the stipulation limiting the time for filing a claim does not apply.    5 Enc., 324.

And, where the agent, after examination and ascertainment of the injury, directs the disposition of the goods, or promises to adjust the claim, the stipulation is waived. The plaintiff could not tell for what amount to make his claim, until he had disposed of the goods, according to the agent's directions.

The stipulation in the bill of lading that the amount of loss or damage for which the carrier shall be liable shall be computed at the value of the property at the time and place of shipment, must be construed to mean the value, when received by the carrier, under a contract for transportation, which would reasonably include freight paid, either by the consignor or by the consignee, since the property, under such circumstances, would be worth the invoice price with freight added at the point of shipment.    6 Cyc., 401; *Pierce* v. *So. Pac.* (Cal.), 40 L. R. A., 355.

The only element of value added at destination was the freight charges, which appear to have been paid by the consignee.    The error complained of was, therefore, harmless.

Judgment affirmed.